EVANS *v.* SAWYER.

5-1439                                                309 S. W. 2d 25

Opinion delivered January 20, 1958.

*Switzer & Switzer* and *DuVal L. Purkins,* for appellant.

*A. James Linder, William S. Arnold, Y. W. Etheridge* and *Herman L. Hamilton, Jr.,* for appellee.

GEORGE ROSE SMITH, J. In this proceeding the appellant, Charles R. Evans, Jr., contests the will of his mother, Winnie Evans Hill, on the grounds of testamentary incapacity and undue influence. In the trial court the will was upheld and admitted to probate.

Mrs. Hill, a lifelong resident of Ashley county, died March 11, 1956, at the age of fifty-eight. She was survived by her son, who lives in Mississippi, and by two sisters, Mrs. Genie Porter of Glastonbury, Connecticut, and Mrs. Velma Benjamin, of Houston, Texas. By her will, executed on October 19, 1955, Mrs. Hill left substantially one half of her estate to Mrs. Porter, one fourth

to Mrs. Benjamin, and one fourth to a practical nurse, Mrs. Nettie Arrington, on condition that Mrs. Arrington be in the employ of the testatrix at her death. The appellant's two minor children were made contingent beneficiaries if any of the principal bequests should fail.

It is the appellant's contention that his mother had been ill for some twenty years before her death and that the illness resulted in mental incompetency several years before the will was signed in 1955. It is also asserted that the beneficiaries of the will unduly influenced the testatrix, but there is very little proof to support this assertion. Both of Mrs. Hill's sisters have been nonresidents for many years. Mrs. Porter, the chief beneficiary under the will, had not even seen Mrs. Hill for more than two years before the will was executed. Mrs. Benjamin came to Arkansas for a brief visit about three weeks before the will was executed, but there is nothing to indicate the exercise of a sinister influence upon the testatrix. Nor do we find any proof of wrongful conduct on the part of the remaining beneficiary, Mrs. Arrington. Without discussing this issue at length, it is enough to say that the trial court's rejection of the charge of undue influence is not against the weight of the evidence.

On the principal issue of testamentary capacity the law is so well settled in this state that there is no need for us to restate the familiar rules that control this case. The basic question is whether the probate court's finding of testamentary capacity is contrary to the preponderance of the proof. The record is much too large to warrant a detailed review of all the testimony. We are convinced that the weight of the evidence supports the trial court's conclusion and shall state only some of the salient facts that confirm our view.

The testatrix married her first husband, Charles R. Evans, in her teens and lived with him until his death in January of 1947. A few months after Evans died the testatrix married a man named Gibson and made her home in Louisiana for a short time. In the summer of 1947 the appellant filed a suit against his mother. The complaint charged her with fraud in connection with an

undelivered deed and asserted that she was wrongfully dissipating the estate of Evans senior, who had died intestate. This case was settled in 1948 by the entry of a consent decree dividing the Evans estate between the mother and son. Most, if not all, of the property owned by Mrs. Hill at her death was derived from the estate of Evans. In July of 1955 the appellant again sued his mother with respect to the property involved in the earlier case. This suit was compromised by a consent decree entered two days before Mrs. Hill's death.

The litigation we have mentioned tends to show that Mrs. Hill's failure to provide for her son in her will was not the result of mental incapacity. We may fairly infer that the suits brought by the son against his mother led to some estrangement between the two; certainly their relation was not close after 1947. We may also fairly suppose that the testatrix, in making her will, adopted the view that her son had already received, through litigation, his just share of his father's former holdings. Finally, it must be noted that each suit proceeded to a decree without the appointment of a guardian *ad litem* for the defendant. Thus it seems that the appellant, in his mother's lifetime, was not sufficiently convinced of her incompetency to take the precaution of having a guardian appointed as a safeguard to his interest as well as hers in the land involved in that litigation.

It is shown that the testatrix suffered from arthritis and from arteriosclerosis for a number of years before her death at the age of fifty-eight. In the course of her painful illnesses Mrs. Hill consulted many physicians. These expert witnesses are not in agreement as to her testamentary capacity; their conflicting testimony is fairly evenly balanced.

Dr. Wright, whose clinic is in Louisiana, attended Mrs. Hill occasionally over a period of twelve years and thinks that she was incompetent to make a will on October 19, 1955. Within a month after that date Dr. Wright observed Mrs. Hill and recorded a diagnosis of dementia praecox. Another physician, Dr. Wood, who treated

Mrs. Hill on a few occasions in 1955, expresses the opinion that she was then unable to transact ordinary business.

On the other hand, the testimony of Dr. Regnier and Dr. Delaney is persuasive. Within the month preceding the execution of the will Mrs. Hill was an in-patient at the Crossett Health Center, from September 19 to October 5, under the care of Dr. Regnier. The detailed records of the hospital rather strongly negative the suggestion of mental incapacity. Dr. Regnier's opinion that his patient was able to make a will is shared by Dr. Delaney, who attended Mrs. Hill on the day after the will was signed.

The testimony of the lay witnesses is also in conflict, but in our judgment it preponderates in favor of the will. W. S. Arnold, who drafted the instrument, was called as a witness by the contestant, although Arnold was one of the attorneys for the proponents of the will. This attorney had been employed by Mrs. Hill to defend the second suit brought against her by her son. Mrs. Hill's third husband, Bradley Hill, died while she was in the hospital at Crossett. After her return to Hamburg she telephoned Arnold and asked him to come to her home to discuss the preparation of a will. Arnold visited her on October 11 and obtained the information needed for the drafting of the will. Mrs. Hill enumerated her relatives—without prompting, as Arnold did not know who her relatives were. She also furnished him with a correct description of her land and with the birth dates of her two grandchildren. The testatrix selected as attesting witnesses a banker, an abstracter, and a merchant. After having prepared the will Arnold returned to Mrs. Hill's home on October 19, with the witnesses, and the instrument was duly executed.

The three attesting witnesses made the usual proof of the will and, as far as they were examined in the matter, confirmed the existence of testamentary capacity. An attorney, Y. W. Etheridge, testified in the case before he was employed to represent one of the proponents of the will. Etheridge had known Mrs. Hill for thirty years

and had been her neighbor for three or four years before her death. It was his positive and unqualified opinion, based upon almost daily observation, that Mrs. Hill had the mental capacity that the law requires on the part of a testator.

Without further detailing the evidence we conclude from the record that the trial court's findings are supported by the weight of the testimony.

Affirmed.